SAN FRANCISCO HOTEL COMPANY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8913.   Promulgated March 16, 1931.

*Herman Phleger, Esq.*, and *A. Porter Robinson, Esq.*, for the petitioner.

*Eugene Meacham, Esq.*, for the respondent.

### OPINION.

BLACK: This is a proceeding under Rule 62 (b) of the Board's rules of practice.  A hearing was had before the Board on July 1, 2, and 3, 1929, the hearing being limited, pursuant to the stipulation of the parties and the order of the Board, to the issues which do not involve sections 327 and 328 of the Revenue Act of 1918.

On March 24, 1930, the Board rendered its decision (19 B. T. A. 383), holding that the petitioner was entitled to deduct the business expenses disallowed by the Commissioner, but sustaining the action of the Commissioner in disallowing affiliation, in computing the tax upon a fiscal year basis, and in disallowing a deduction for obsolescence of good will.  In its decision the Board ordered that further proceedings be had under Rule 62, or in the absence of such proceedings, that judgment be entered under Rule 50.

On May 19, 1930, the petitioner filed a motion for a hearing upon the issue as to whether the petitioner is entitled to have its tax determined as provided in section 328 of the Revenue Act of 1918.

On July 10, 1930, the parties filed a stipulation that the issue as to whether or not the petitioner is entitled to have its tax determined as provided in section 328 of the Revenue Act of 1918, may be submitted for determination by the Board upon the testimony taken and evidence introduced at the trial held on July 1, 2, and 3, 1929.

On August 14, 1930, the Board entered an order granting said motion and approving said stipulation. The principal facts are set out in our earlier decision and need not be repeated here.

The petitioner's claim for special assessment is based upon section 327 of the Revenue Act of 1918, the pertinent provisions of which are as follows:

That in the following cases the tax shall be determined as provided in section 328:

\* \* \* \* \* \* \*

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. \* \* \*

Under the provisions of Rule 62 and the practice of the Board, the sole issue now before the Board is whether or not there were abnormal conditions affecting the capital or income of the petitioner for the period here involved which would entitle the petitioner to a special assessment upon the basis of the comparatives referred to in section 328 of the Revenue Act of 1918. The petitioner claims the right to a special assessment by reason of the following abnormal conditions affecting its income:

(1) The income of the petitioner was artificially increased by the diversion of earnings from Crocker Hotel Company to the petitioner.

(2) The taxable income of the petitioner was artificially increased by the computation of the petitioner's tax on a fiscal year basis.

We will first take up petitioner's claim (1) as to why special assessment should be granted. The petitioner and the Crocker Hotel Company were both incorporated in 1901. Petitioner was organized for the purpose of leasing and operating the St. Francis Hotel, located in San Francisco, Calif. The Crocker Hotel Company was organized at the same time for the purpose of constructing and holding title to the hotel property. From the time they commenced business and continuously thereafter the two corporations occupied the relationship of lessor and lessee, the Crocker Hotel Company owning the hotel and the petitioner operating it under lease. The only income of the Crocker Hotel Company was from this lease. During the taxable years the entire capital stock of the Crocker Hotel Company was owned by Templeton Crocker and Jennie Crocker, and they also owned from 52.62 per cent to 55.36 per cent of the stock of the petitioner. The remaining stock of the petitioner was owned by employees, attorneys, and personal representatives of the Crockers, and by business associates of the Crockers or the petitioner.

During the taxable years the president, vice president, and secretary of petitioner held similar positions with the Crocker Hotel Company, and all of the directors of the latter were directors of petitioner. The affairs of both companies were dominated by Henry T. Scott, a prominent banker and business man, who had been the guardian of the Crockers until they became of age in 1905 and afterwards acted for them under power of attorney. He was president of petitioner and vice president of the Crocker Hotel Company, directed their policies and acted on all matters of consequence, usually without consulting his directors.

Shortly after the incorporation of the companies the main building was erected and leased to petitioner on a basis of gross rental amounting to 5.5 per cent of the cost, and the annexes subsequently erected were leased at gross rental of 6 per cent of the cost. The lease on the main building expired January 1, 1919, and a new lease was not made until one year after. The main building was thus operated for one year without a lease, but the same rental was paid. A new lease for ten years, beginning January 1, 1920, was made on the same terms as formerly.

The invested capital, net income, and rate of return on invested capital of the petitioner and Crocker Hotel Company for 1918, 1919, and 1920 were as follows:

CROCKER HOTEL COMPANY

|  | Year 1918 | Year 1919 | Year 1920 |
|---|---|---|---|
| Cash invested | $5,331,741.14 | $5,331,741.14 | $5,331,741.14 |
| Net income | $54,871.05 | $140,354.27 | $133,098.90 |
| Rate of return | 1.03% | 2.63% | 2.50% |

SAN FRANCISCO HOTEL COMPANY

Fiscal year May 31, 1918, to May 31, 1919, invested capital as determined by the Commissioner, $511,248.31, acquiesced in by petitioner. Net Income for taxable year $234,637.87. Rate of return on capital invested 45%.

Total tax, including amount assessed on original return and deficiency as found by the Commissioner _____ $124,730.89

Period from June 1, 1919, to April 8, 1920, when affiliation took place. Invested capital as determined by the Commissioner and acquiesced in by petitioner, $613,993.27. Net income for taxable period $327,587.75. Rate of return on capital invested 53%.

Total tax, including amount assessed on original return and deficiency as found by the Commissioner _____ $123,404.82

Thus the net earnings of Crocker Hotel Company, consisting of the rentals received by it from the petitioner, resulted in a return

on its invested capital of 1.03 per cent in 1918, 2.63 per cent in 1919, and 2.50 per cent in 1920, or an average of 2.05 per cent, while the net earnings of the petitioner resulted in a return on its invested capital of 45 per cent for fiscal year ending May 31, 1919, and 53 per cent for the period June 1, 1919, to April 8, 1920, when affiliation took place. This great disparity between the returns derived by the two corporations resulted in part through the payment by petitioner of an abnormally low rental to the Crocker Hotel Company.

In addition to the payment of an abnormally low rental, a further abnormality resulted from the payment of salaries by the Crocker Hotel Company to officers whose services were rendered almost entirely for the benefit of the petitioner. Neither H. T. Scott, the president, nor C. F. Lewis, the secretary-treasurer, ever received any salary or compensation from the petitioner. Their salaries were paid by the Crocker Hotel Company, although by far the greater part of their services were rendered in connection with the petitioner's business. These salaries amounted to $11,000 in 1918, $11,500 in 1919, and $12,750 in 1920.

Facts somewhat similar to those detailed above were present in *Bates-Bowman Corporation*, 20 B. T. A. 460. In that case a lease of a hotel was made to a corporation by its sole stockholder, who was the owner of the building, at a rental of $74,250, and the payment of all assessments, taxes, water rents, and other such charges. In granting special assessment we said:

It is contended, however, and established by the evidence, that the rent reserved in the lease was much less than would normally have been paid. Since the lease was made between a corporation and its sole stockholder, such a situation is not unusual. This lease was the principal, if not the only factor that produced the income upon which the tax is levied. All such cases do not fall within section 327 of the Act, *but where there is such a substantial difference between the rent paid and the rent which normally would have been paid by any other lessee, and abnormality in the income results, entitling the petitioner to any relief which may be afforded by a computation of its tax under section 328 of the Act.*

In the instant case the facts show that the only income of the Crocker Hotel Company, the owner of the St. Francis Hotel property, was from its lease of such property to petitioner, and that the rental income from this lease was abnormally low when compared to the location and value of the leased property and that petitioner was the direct beneficiary of this low rent. We think this fact, and the further fact that Crocker Hotel Company paid the entire salaries of two of petitioner's principal officers, created an abnormality in petitioner's income for the taxable years and it is entitled to special assessment under the provisions of section 328, Revenue Act of 1918. Having held that petitioner is entitled to special assessment on

account of the grounds above stated, it is unnecessary to discuss paragraph (2) of the grounds urged for special assessment by petitioner.

*Judgment will be entered under Rule 62 (c).*